473 A.2d 1052

**Ruth SAVAGE and Meesha Scott, a Minor, by her Parent and Natural Guardian, Delores Scott and Delores Scott, in her own right, Appellants,**

v.

**COMMERCIAL UNION INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Dec. 9, 1983.

Filed March 13, 1984.

Allen L. Feingold, Philadelphia, for appellants.

Gary V. Gittleman, Philadelphia, for appellee.

Before CAVANAUGH, BROSKY and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from that portion of the June 3, 1983 Order of the Court of Common Pleas of Philadelphia County (per Judge DiBona) "dismiss[ing] with prejudice" appellants', Ruth Savage's, Dolores Scott's and Meesha Scott's, Petition for Uninsured Motorist Arbitration. We reverse.

The record reveals the following: On May 13, 1974, appellants had entered a taxicab in Philadelphia, Pennsylvania, which was struck by a vehicle insured by Safeguard Mutual Insurance Company (Safeguard). Because the appellants had sustained injuries, and Safeguard was declared insolvent, they sought entitlement to benefits by filing a claim with the taxicab's insurer, appellee-Commercial Union Insurance Company (CUIC), under The Pennsylvania Insurance Guaranty Association Act. 40 Pa.C.S.A. § 1701.101 *et seq.*

By letter dated August 10, 1981, counsel for the appellants notified CUIC of "the[ir] wish to file an uninsured motorist claim" in regard to the 5/13/74 accident and to have the matter resolved by a three-member panel of arbitrators, with the neutral arbitrator selected by the other two members chosen by each side. Appellants listed their choice and went on to state that if a response was not received within a reasonable time from CUIC, they would "commence suit accordingly." Thereafter, on January 18, 1982, appellants filed a "Petition to Appoint a Neutral

Arbitrator" claiming that the two sides had "not been able to mutually select [sic] a neutral arbitrator to hear th[e] uninsured motorist claim and/or [CUIC] ha[d] failed and/or refused to mutually select [sic] an arbitrator." Appellants also made averments concerning the occurance of the accident, their injury and the filing of a claim with the appellee.

In its Answer, appellee denied all of the appellants' allegations save for the admission "that the Petitioners were passengers in the insured's vehicle." Further, appellee mentioned that it had "selected Edward Leach as its arbitrator ... [and] requeste[d] the Petitioners to advise who they had selected as their arbitrator in order that a neutral arbitrator c[ould] be selected." It is to be noted that appellants named their choice (Joseph Mellace) in their August 10, 1981 letter to the appellee, but the appellee, in a "Memorandum" attached to its Answer, asserted that the petition was the first demand by the appellants' attorney for an uninsured motorist arbitration and that appellants' attorney had never advised it of their choice for an arbitrator. As a result, appellee requested that the petition be dismissed as premature.

■ Judge Gafni entered two Orders. The first was dated April 2, 1982, directing that the matter proceed to arbitration within 45 days, and that he would appoint the third arbitrator if he were not advised within 20 days that such an appointment had occurred. The judge's second Order, issued April 27, did what the parties had failed to accomplish, i.e., appointed a neutral arbitrator. In the interim, appellee had sought to depose appellants. However, by letter dated April 19, 1982, counsel for the appellants informed CUIC that, *inter alia*, because it "ha[d] no right to a sworn statement," neither he nor his clients would be present at the scheduled deposition. As a result thereof, counsel for the appellee submitted a "Petition to Stay Uninsured Motorist Arbitration," and, in support thereof, attached a "Memorandum of Law." Both documents made reference to the source of appellants' right to recoupment, i.e., appellee's policy of insurance. Appellee

alleged that "unless and until the [appellants] ha[d] met their obligations under the terms of the ... policy" they had no right to an arbitration hearing. In particular, appellee averred:

In view of the facts and the allegations made by the plaintiffs, they are bound to comply with the terms of the same policy of insurance issued by Commercial Union as stated in the defendant's Petition attached hereto, the "Conditions" part of the policy provides as follows:

"3. Proof of Claim; Medical reports: As soon as practicable, the insured or other person making claim shall give to the Company written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable hereunder. The insured and every other person making claim hereunder shall submit to examinations under oath by any person named by the Company and subscribe the same, as often as may reasonably be required...". (See Exhibit "D–2" paragraph 3)

The aforementioned policy under the "Conditions" section also provides:

"11. Action Against Company: No action shall lie against the Company unless, as a condition precedent thereto, the insured or his legal representative has fully complied with all the terms of this endorsement". (See Exhibit "D–2" paragraph 11)

The plaintiffs have clearly failed to comply with the conditions precedents [sic] set forth in the policy. The plaintiffs cannot seek to claim rights under said policy without being subject to the condition set forth therein. The defendant is entitled to take the sworn statements of the plaintiffs herein in order to properly prepare [sic] its case for trial and evaluate its exposure.

Additionally, our review of Paragraph 8 of the "Conditions" portion of the policy of insurance indicates that disputes concerning "entitlement to recover damages" or "the amount of payment" allegedly owed by the insurer to a

claimant "shall be settled by arbitration in accordance with the rules of the American Arbitration Association[.]" [1]

In the Answer to appellee's petition, appellants did not dispute their refusal to give a sworn statement, contending that "they [were] not required to under the laws of this Commonwealth; and[,] more importantly, they [were] not required under the Orders of Judge Gafni ... directing that a hearing commencing within 45 days from the date of his original Order" take place. Further, appellants argued that since "[t]his [was] the first time that the issue of giving a sworn statement ha[d] been raised[,]" because the petition to proceed to arbitration had been granted and the court had appointed a neutral arbitrator, appellee's petition to stay the arbitration should be denied.

Judge Gafni disagreed and, in an Order issued May 27, 1982, directed the appellants to appear in appellee's counsel's office for the taking of sworn statements, as well as holding in abeyance any arbitration proceedings until such time as the appellants appeared for their sworn statements.

1. Paragraph 8 reads in its entirety:
    8. Arbitration: If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this endorsement, then upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this endorsement.
    Instantly, since neither the insurance policy's arbitration clause nor any subsequent agreement between the parties evidenced an intention to look to statutory arbitration (*see, e.g.,* Uniform Arbitration Act, 42 Pa.C.S.A. § 7301 *et seq.*) as the means by which disputes under the policy of insurance would be resolved, common law rules control. *John Robbins Co. v. Airportels, Inc.,* 418 Pa. 257, 210 A.2d 896 (1965); *Smith v. Safeguard Mutual Insurance Co.,* 212 Pa.Super. 83, 239 A.2d 824 (1968). In other words, in the case at bar, we are dealing with common law arbitration. *See Runewicz v. Keystone Insurance Co.,* 476 Pa. 456, 383 A.2d 189 (1978); *National Grange Mutual Insurance Co. v. Kuhn,* 428 Pa. 179, 236 A.2d 758 (1968).

The deposition, having been initially postponed because Ms. Savage had been released from the hospital the date it was scheduled, was held on December 20, 1982, in appellee's counsel's office.

Ms. Savage, during questioning by counsel for the appellee, answered inquiries regarding her marital situation, living accomodations and employment status. Ms. Savage responded to the last question by stating that, upon the advice of her doctors, she had not worked since the date of the accident. Also, she testified that, as of eight years after the accident, treatment was still being administered to her for injuries sustained as a result thereof. However, when counsel for appellee asked Ms. Savage if she had paid her doctor bills, her counsel objected and instructed her not to respond. Immediately thereafter, the following exchange took place:

BY MR. GITTLEMAN:

Q. Have you paid for the doctor?

MR. NERENBERG: I object to that question. I instruct her not to answer.

MR. GITTLEMAN: At this time for the record, I would like to request that Judge Gafni review the testimony up to this point and ask both people to come back to testify at a later date.

I believe that counsel is being obstreperous and will not permit the sworn statement to go on. I believe that this material is quite evident to be necessary in preparation of the defense of this case. Claimant has filed a claim for P.I.P. benefits and this deposition is going to be used for that.

Also, it should be further noted that I have attempted to accommodate the plaintiffs. There was no notice of this deposition either by phone or by mail or in my file. I have asked counsel for the plaintiff, Sheldon Nerenberg, to supply me with what date this was scheduled. He could not. I have asked him to give me his file to indicate when this was scheduled and he is not able to do that.

In view of the statement, I would petition Judge Gafni to reschedule this deposition. Thank you.

MR. NERENBERG: We are not going to reschedule. We are here today for the deposition. If he wishes to take it, fine. It's up to him.

As described by counsel for the appellants in his brief to this Court, Attorney Gittleman terminated the deposition and left the office. Thereafter, despite appellants' counsel's sending a letter (accompanied with copies of the police's accident reports) to appellee's counsel (dated February 8, 1983,) informing him that the claimants intended to be present at the February 28, 1983, arbitration hearing, counsel for the appellee filed a "Petition to Dismiss Uninsured Motorist Arbitration." Therein, counsel alleged, as is relevant here, that:

13. The plaintiffs have failed to comply with the Order of this Honorable Court dated May 27, 1982 ... and therefore no uninsured motorist arbitration may be held.

14. The neutral arbitrator, Barnaby C. Wittels, Esquire has scheduled the arbitration ... for February 28, 1982....

15. In view of the plaintiff's failure to have their sworn statements taken, the uninsured motorist arbitration scheduled for February 28, 1983 should be dismissed with prejudice, or in the alternative at the very least, continued until such time as the plaintiffs have complied with the [May 27, 1982] Court Order.

In a "Memorandum of Law" affixed to appellee's petition, counsel repeated some of the arguments proffered in his initial petition to stay the arbitration and made reference to appellants' failure to comply with the "Conditions" section of the policy of insurance calling for a claimant to "submit to examinations under oath ...." Counsel for the appellee went on to characterize the atmosphere at the deposition hearing as one in which:

It became immediately apparent that plaintiffs' counsel had no intention of allowing the plaintiff to answer questions concerning information to which the defendant was

entitled.... The statement of Ruth Savage was stopped at that time since to continue would have been an exercise in futility. The statements of plaintiffs, Delores Scott and Meesha Scott were never taken.

In response, counsel for appellants reiterated the arguments raised in his Answer to appellee's prior petition, i.e., questioning the authority of the court to require such discovery, the relevancy of the subject sought to be discovered and that the matter was more appropriately left to the arbitrators to deal with in the context of a hearing. Nonetheless, counsel for appellants was willing to proceed to have his clients deposed, but he sought to have the inquiry conducted within "ear-shot" of the courtroom so that any issue arising therein could be dealt with by a judge.

A rule returnable was issued for March 4, 1983. Counsel for the appellants failed to appear and, on the same date, an Order was entered directing that no arbitration be held "unless and until the [appellants] complied with the Court's Order dated, May 27, 1982" requiring that sworn statements be given by the appellants. After the entry of the aforecited Order, April 11, 1983 was set for the taking of the depositions. However, counsel for the appellants wrote to the lower court judge, by letter dated March 28, 1983, apprising him that he had not been consulted as to the proposed date and time for the taking of the depositions. Also, he noted that the scheduled date was inconvenient and his clients would be unavailable. As promised, appellants did not appear on the specified date. Consequently, counsel for the appellee filed a "Petition to Dismiss Uninsured Motorist Arbitration." Appellee alleged therein, as is germane to the case at bar:

9. On or about April 4, 1983, Petitioner responded to Plaintiffs' attorney's letter [dated March 28, 1983], and advised Judge Lord that [the attorney for the appellants] refuses to speak to anyone from Petitioner's office. A true and correct copy of said letter is attached hereto, incorporated herein, and labelled Exhibit D–7.

10. On or about April 6, 1983, Judge Lord advised [counsel for the appellants] that Motions, not letters, will be ruled on. A true and correct copy of that letter is attached hereto, incorporated herein and labelled Exhibit D-8.

11. On or about April 11, 1983, the date on which the sworn statements of [appellants] were scheduled, neither [appellants] nor any representative from their attorney's office appeared at Petitioner's office for the taking of the sworn statements.

12. A telephone call was placed to [appellants'] attorney's office, at which time Petitioner was advised that counsel for [appellants] had no record of any sworn statements being scheduled.

13. In view of the fact that counsel for [appellants] acknowledges Petitioner's rescheduling of the sworn statements in his letter to Judge Lord, dated March 28, 1983, as well as the fact that Notice was sent to [appellants'] attorney on March 14, 1983, there is absolutely no basis for any allegation by [appellants'] counsel that he did not have any record of the scheduling of the sworn statements of [appellants].

14. . ...

WHEREFORE, [appellee] respectfully requests that this Honorable Court issue an Order that the Order of the Court dated April 27, 1982, which appointed Barnaby C. Wittels, Esquire, as a neutral arbitrator is vacated and, further, that the [appellants'] Petition for Uninsured Motorist Arbitration is dismissed with prejudice.

Counsel for the appellants responded to the allegations of the appellee by contending that: 1) he had "repeatedly kept trying to schedule these statements" sought by the appellee; 2) it was the appellee which had acted in bad faith in filing its petitions to stay the arbitration, and, thus, prolonged the resolution of the matter at issue; and 3) the court was without authority to require the taking of depositions.

On June 3, 1983, the court below "dismissed with prejudice" appellants' Petition for Uninsured Motorist Arbitration. This appeal followed.

■ Initially, we observe that the instant appeal is from a final order, 42 Pa.C.S.A. § 742, inasmuch as appellants are precluded from having the merits of their claim heard by a panel of arbitrators. *See National Grange Mutual Insurance Co. v. Kuhn*, 428 Pa. 179, 236 A.2d 758 (1968). In other words, the Order of the court below "disposes of the entire case." *See T.C.R. Realty, Inc. v. Cox*, 472 Pa. 331, 372 A.2d 721 (1977); *see also* 42 Pa.C.S.A. § 7320(a)(1) (An appeal may be taken from an order denying an application to compel arbitration under 42 Pa.C.S.A. § 7304 (relating to proceedings to compel or stay arbitration)).

Of the four issues raised by the appellants, we find it necessary, given the result reached, to address only the contention that the court below exceeded its authority in ordering the appellants to submit to a deposition, and, upon failing to do so, to dismiss with prejudice their petition to proceed to arbitration.

We begin our discourse with an examination of *Harleysville Mutual Casualty Co. v. Adair*, 421 Pa. 141, 218 A.2d 791 (1966), which we find instructive in deciding what course to pursue in dealing with the issue at hand.

In *Adair*, a minor had sustained injuries in an automobile accident, and, because the other motorist was uninsured, he filed a claim under his insured's uninsured motorist coverage. The minor, as requested by the insurer (Harleysville), submitted to a physical examination and gave it a statement of the accident. No other information was sought by Harleysville.

After the passage of approximately 2 months, Harleysville informed the minor that it would not settle, for the other motorist in the accident had stated that the minor was at fault. Following this, Harleysville forwarded interrogatories to the minor and demanded that they be answered in

compliance with a provision in the policy of insurance requiring that:

> The insured and every other person making claim hereunder shall submit to examination under oath by any person named by the company and subscribe the same, as often as may reasonably be required.

The preceding paragraph is identical to the one contained in CUIC's policy of insurance.

As a result of Harleysville's refusal to honor the minor's claim, he requested that the matter proceed to arbitration, as provided for in the policy of insurance. The arbitrator, as is applicable here, ruled that the minor did not have to answer the interrogatories and set a date for a hearing. Prior thereto, Harleysville instituted an action for an injunction, seeking to restrain the arbitration hearing from commencing and petitioning for a declaratory judgment. The trial court upheld the minor's preliminary objections and dismissed the complaint in equity. On appeal, our Supreme Court framed the issue for review as one involving a question of procedure; to-wit:

> [W]hether pretrial discovery or "pre-hearing" discovery under the Procedural Rules is available in an arbitration proceeding instituted in accordance with the provisions of the appellant insurer's own contract, which provided for arbitration of uninsured motorist claims in accordance with the rules of the American Arbitration Association.

*Id.*, 421 Pa. at 143, 218 A.2d at 793.

The *Adair* Court refused to embrace Harleysville's view that a provision of its policy, "requiring the insured and every other person making a claim to submit to examination under oath by a person named by the company, as often as may be reasonably required, [was] a condition precedent to the institution of arbitration, i.e., *prior* to the arbitration ...." (Emphasis in original) *Ibid.*

More importantly, the Court then proceeded to articulate its reasons for holding that Harleysville had no right to impede the orderly commencement and completion of an arbitration proceeding on the ground that the claimant had

not responded to its interrogatories. In pertinent part, the Court stated:

When appellant, by its own contract, agreed to abide by the rules of the American Arbitration Association, it voluntarily surrendered the right to invoke any of the procedural devices which would be available in an action at law. The right to discovery is one of these devices which is not obligatory as an essential of due process to a valid arbitration proceeding.

To hold that all arbitration proceedings must be considered subject to all the procedural devices available in ordinary civil actions instituted in a court of law, without regard to either the provisions of the arbitration contract or the rules of the American Arbitration Association would eliminate, or at least severely curtail, arbitration as a means of facilitating the solution of disputes. One need only consider what such a ruling would do to all the compulsory arbitration proceedings which have so effectively reduced backlogs in cases under $2,000.

To permit an equity action to be brought to restrain an arbitration proceeding in toto or to obtain declaratory judgments as to procedural matters because of dissatisfaction with an interlocutory ruling of the arbitrator would be unthinkable. No such injunctive or declaratory judgment process is available in an ordinary civil action at law as a means of challenging an interlocutory ruling by the court.

Appellant here agreed that the rules of evidence applicable in ordinary actions at law were not to be applicable to these arbitration proceedings under the rules of the American Arbitration Association. This provision must be construed together with the provisions of the policy relating to interrogation of the claimant with regard to his proof of claim. Appellee, to the point of arbitration, cooperated with appellant insurer. After the commencement of the arbitration the arbitration procedures agreed to by appellant controlled. To permit appellant to main-

tain this proceeding in equity would permit it to gain by indirection what it is not entitled to by direct action.

Finally, the Arbitration Act of 1927, supra, Secs. 7 and 10, 5 P.S. §§ 167, 170, provide a complete method of statutory relief by appeal to the court to vacate, modify or correct an award where the arbitrators exceed their powers or refuse to hear evidence or by misbehavior prejudice the rights of a party.[2] Recourse to equity is therefore improper and unjustified.

*Id.*, 491 Pa. at 145, 218 A.2d at 794.

Instantly, as in *Adair*, the policy of insurance contained a clause requiring that any disagreement concerning the issue of negligence and/or damages would be "settled by arbitration in accordance with the rules of the American Arbitration Association." *See* note 1, *supra*. Further, there is no evidence of record to indicate that the appellee either disputed the applicability of the arbitration process as the means by which appellants' claim was to be resolved, or that it was unaware of the fact that the American Arbitration Association rules make no provision for any pre-trial discovery as in actions at law.

■ Therefore, because the arbitration process had come into effect here (the three arbitrators had been selected and a hearing date had been set), prior to appellee's request that the appellants subject themselves to being deposed, the court below acted *ultra vires*.

Since an aspect of appellee's uninsured motorist clause would have been at issue, i.e., whether the appellants were obligated to submit to a deposition as a condition precedent

2. We note that the concluding paragraph in *Adair*, to the extent that it endorses the use of statutory rules of arbitration to question a common law arbitration award, has lost some of its vitality. *See Johnson v. Harleysville Mutual Casualty Co.*, 212 Pa.Super. 89, 239 A.2d 828 (1968), *cert. denied*, 393 U.S. 1087, 89 S.Ct. 876, 21 L.Ed.2d 780 (1969). The appellate courts of this Commonwealth have adhered to the tenet that where the same arbitration provision as is present here is at issue, the dispute resolution process is subject to common law rules of review. *See, e.g., National Grange Mutual Insurance Co. v. Kuhn*, 428 Pa. 179, 236 A.2d 758 (1968); *Smith v. Safeguard Mutual Insurance Co.*, 212 Pa.Super. 83, 239 A.2d 824 (1968).

to continuing with the arbitration, the matter was within the exclusive jurisdiction of the arbitrators. *See United Services Automobile Association Appeal,* 227 Pa.Super. 508, 516, 323 A.2d 737, 741 (1974); *cf. Pennsylvania General Insurance Co. v. Barr,* 435 Pa. 456, 459, 257 A.2d 550, 552 (1969) ("In other cases construing language virtually identical to that found in the present arbitration provisions, we have held that it was for arbitrators to decide whether ... a condition precedent of recovery had been satisfied ...." (Citations omitted)). Furthermore, although not controlling, it is to be observed that our Legislature has recognized, in the context of statutory arbitration, the feasibility of having an application seeking a deposition ruled upon by the arbitration panel as part and parcel of the dispute resolution process. The relevant part of the statute reads:

> **(b) Depositions.**—On application of a party and for use as evidence the arbitrators, in the manner and upon the terms designated by them, may permit a deposition to be taken of a witness who cannot be served with a subpoena or who is unable to attend the hearing.

The Act of October 5, 1980, P.L. 693, No. 142, § 501(a), 42 Pa.C.S.A. § 7309(b).

Accordingly, we believe that the more acceptable procedure would have been for the appellee to apply and request from the arbitrators permission to depose the appellants, instead of seeking a stay from the court to achieve the same result. Thus, inasmuch as the lower court's directive that the appellants be deposed usurped a function more appropriately left to the arbitrators, we find that the appellants' refusal to abide by the court's order is subject to no sanctions, i.e., the dismissal with prejudice of their petition to proceed to arbitration.

Our holding is consistent with the ruling in *Adair,* which refused to equate the discovery procedures indigenous to an action at law with the rules (e.g., American Arbitration Association guidelines) applicable to an arbitration proceeding.

In closing, we note what was stated by the Court in *Adair* that the insurer is not prejudiced, for, "[i]n any event, [it] can examine the claimant under oath during the arbitration process so that no substantive rights of the [insurer] are in any way affected." *Id.* 421 Pa. at 144, 218 A.2d at 794. Also, if the appellee feels that it has been denied a fair hearing, assuming for the sake of argument that the arbitrators do not permit it to depose the appellants, *see Smaligo v. Fireman's Fund Insurance Co.*, 432 Pa. 133, 134, 247 A.2d 577, 578 (1968), it is afforded an avenue of relief in the nature of an appeal to the court to vacate or modify an award. *See* 42 Pa.C.S.A. § 7341; *Great American Insurance Co. v. American Arbitration Association*, 436 Pa. 370, 260 A.2d 769 (1970). Therefore, appellee's recourse to the court of common pleas was premature and unjustified.

Order reversed. Jurisdiction is relinquished.