Eugene C. WAYNE, John C. Wolfe and Kenneth R. Sandler

v.

George CHOPIVSKY, Jr., Richard E. Horman and Joseph F. Corcoran.

Civ. A. No. 85–5943.

United States District Court, E.D. Pennsylvania.

March 9, 1987.

---

**3.** At oral argument on this matter, counsel for plaintiff also stated that ICN does not claim to be a consumer.

William Hildebrand, Philadelphia, Pa., for plaintiffs.

Lee Galligaro, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Presently pending are plaintiffs' and defendants' cross motions for summary judgment in this diversity action arising from a contract dispute.[1] For the reasons stated below, I grant plaintiffs' motion and deny defendants' motion.

## I. FACTS

The facts leading up to this litigation are essentially undisputed. Plaintiffs are employees of the Fairmount Institute (TFI), a psychiatric hospital located in Philadelphia. Defendants were controlling shareholders of National Psychiatric Institutes, Inc. (NPI), which owned TFI. In August, 1982, all the stock of NPI was sold to another company, Health Group Inc. (HGI). Upon the sale of this stock, the Release Agreements that are the basis of this dispute were entered into between each of the plaintiffs and defendants. These Agreements provided that each of the plaintiffs would be paid a sum of money (aggregating $150,000.00) in the event that TFI's "net earnings before federal and state income taxes," as defined in the agreements, exceeded $1,500,000.00 for fiscal year 1983. (Plaintiffs' Ex. A). Section 2.1 of the Agreements, the provision that is the basis of the dispute among the parties states:

Section 2.1. No monies shall be payable hereunder unless TFI's Earnings Before Federal and State Income Taxes, as hereinafter defined, shall equal or exceed $1,500,000.00 for the first twelve month fiscal year ending after the date hereof ("Fiscal Year"). For purposes of this Agreement, TFI's earnings before federal and state income taxes ("Earnings Before Federal and State Income Taxes") shall be the audited earnings of TFI before any deductions for federal and state income taxes, as determined by TFI's outside auditors (whose determination shall be final), calculated in accordance with generally accepted accounting principles, consistently followed throughout the periods involved, before extraordinary items, and after deducting (a) a management fee payable to NPI in an amount equal to 5% of TFI's gross revenues; (b) TFI's interest and depreciation charges (excluding the effect of the sale of NPI to Health Group, Inc. ("HGI") and (c) bonuses accrued and payable to TFI employees.

After the completion of TFI's 1983 fiscal year, John Foos, a partner in Peat, Marwick, Mitchell & Co., TFI's outside auditors, prepared an audited financial statement of TFI's earnings. He determined that the net earnings as defined in the Agreements were $1,518,140.00, thus exceeding the target amount by $18,140.00. Plaintiff Wayne then forwarded a copy of the earnings statement and an accompanying written statement prepared by Peat Marwick to each of the defendants, along with a letter of his own requesting payment pursuant to the Agreements. (Plaintiff's Ex. G and H). A month later, at defendants' request, Wayne also provided defendants with a copy of TFI's audited statement for 1983 (Ex. I). Following receipt of this information, defendants were not satisfied that the calculation of net earnings, as defined in the Agreements, was done properly. They requested additional information, and ultimately a meeting took place between Peat Marwick and defendants' accountants. (Plaintiff's Ex.

---

1. I initially denied both motions without prejudice, scheduled oral argument, and allowed the parties to request reconsideration of their motions following argument. *Wayne v. Chopivsky*, No. 85–5943 (E.D.Pa. Jan. 14, 1987) (order). Both parties have requested reconsideration.

K–R). In October 1984, negotiations broke off and this litigation ensued.

## II. DISCUSSION

The crux of this dispute is the proper interpretation of Section 2.1 of the Release Agreements. Plaintiffs contend that Section 2.1 means that the auditor's calculations are final and binding. They claim the finality language was deliberately included to avoid a future dispute as to whether the earnings target was met. Plaintiffs argue that since the auditor found that the target amount was met, they are entitled to payment pursuant to the contract.

Defendants assert that plaintiffs are not entitled to payment because the auditor's calculation is not in accordance with the Agreements. They claim that while Section 2.1 means that the auditor's determination is final as to the audited earnings, the contract does not foreclose inquiry into the calculation of the adjustments to earnings that are also provided for in Section 2.1. They further argue that the Agreements require accounting *practices*, as well as principles, to be consistently followed.

Interpretation of a contract that is clear and unambiguous is for the court. *Pines Plaza Bowling Inc. v. Rossview, Inc.*, 394 Pa. 124, 145 A.2d 672, 676 (1958); *County of Erie v. American States Insurance Co.*, 573 F.Supp. 479, 483 (W.D.Pa.1983), *aff'd*, 745 F.2d 45 (3d Cir.1984). The determination of whether a contract is unambiguous is a matter of law for the court. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir.1980). "But conflicting conclusions as to the interpretation of a written contract which is clear and unambiguous as to its terms will not create a material issue of fact to bar disposition by summary judgment." *County of Erie*, 573 F.Supp. at 483. In this case, both sides claim that the language is clear and unambiguous and that the language should be interpreted by the court. *See* Plaintiffs' Motion for Summary Judgment [hereinafter cited as Plaintiffs'

Motion] at 2; Oral Argument at 58–61, 88–95, 109–115.[2] I agree that the language is clear and unambiguous and will therefore turn to interpreting the Agreements in accordance with their plain meaning.

With regard to whether the auditor's determination was intended to be final, I find that the language of Section 2.1 supports plaintiffs' interpretation of the Agreements. Defendants agree that the auditor's determination is final at least as to the audited earnings, but argue that the calculation of the adjustments is distinct from the calculation of audited earnings. The word "audit" is defined as:

A formal or official examination and verification of books of account (as for reporting on the financial condition of a business at a given date or on the results of its operations for a given period); by a methodical examination and review of a situation or condition (as within a business enterprise) concluding with a detailed report of findings: a rendering and settling of accounts; 2. the final report following a formal examination of books of account: an account as adjusted by auditors: final statement of account."

Webster's Third New International Dictionary 143 (1966). By the plain meaning of the word "audit," there is nothing that would exclude the contract adjustments from the audited earnings. The audited earnings are simply the calculation of earnings that are the result of an examination by an auditor. The fact that the parties placed additional restrictions on the definition of earnings does not mean that the adjustments are not part of the calculation of the audited earnings.

Moreover, defendants' explanation of the meaning of the language "whose determination shall be final" is not logical. Had defendants intended to review the final figure of the auditor, they would have contracted to review all of the auditor's calculations, regardless of whether they related to the adjustments or to other matters. Plaintiffs' explanation of this language is

---

**2.** Proceedings before Judge Daniel H. Huyett, 3rd, February 17, 1987, tape no. 3, case no. 85–5943. The oral argument was electronically recorded. These numbers refer to the position of the tape when these comments were made.

far more persuasive. Plaintiffs assert that this language was included for the purpose of avoiding a future dispute as to whether the target amount had been met. Defendants' construction, which would permit open ended review of every calculation of the auditor, would rob this language of any meaning.

Defendants argue that Section 4 of the Release Agreements proves that the auditor's determination was not intended to be final as to the adjustments. Section 4 provides:

### TFI FINANCIAL STATEMENTS.

TFI and NPI agree to send to the other parties hereto, within 120 days after the end of the Fiscal Year, in the manner provided in Section 6.2, copies of the audited financial statements of TFI for the Fiscal Year. TFI and NPI further agree to have the outside auditors of TFI provide certificates or other documents reasonably requested by the parties hereto relative to this Agreement or any amounts due hereunder. A delay in the delivery of the financial statements shall not affect the obligation of the Shareholders to pay the Principal Amount, provided that the Conditions Precedent contained in Section 2 have been met.

Defendants claim that the fact that defendants are entitled to financial statements, certificates and other documents is at odds with plaintiffs' claim that the auditor's determination as to the earnings amount is final. I disagree. There are numerous reasons why defendants may desire this information without contradicting the finality of the auditor's determination. For example, defendants may simply have wanted copies of these documents for their own records for tax or other purposes, or more likely, wanted to verify that the auditor actually determined that the target amount was met without having to take plaintiffs at their word. Whatever defendants reasons may have been, I do not find that this section, which merely allows defendants access to documents, is inconsistent with a provision requiring that the au-

ditor's determination as to net earnings is final.

Defendants also argue that two responses in Wayne's deposition contradict plaintiffs' assertion that the auditor's determination was intended to be a final one. These exchanges are as follows:

Q: (by defendants' counsel) I thought you testified earlier that you thought the auditors' certification was final as to the total income but that defendants were at least entitled to assure themselves that the three adjustments mentioned in paragraph 2.1 were done properly; isn't that right?

A: Correct.

(Wayne dep. at 65).

Q: (by defendants' counsel) Is there anything in the Release Agreement or in anything you've said in your correspondence which leads you to believe that the defendants are required to rely simply on the auditors' certification on the question of whether bonuses were deducted?

A: No.

(Wayne dep. at 68). As plaintiffs argue, however, no follow up questions were asked as to what Wayne meant by these statements. Give that Wayne had testified unequivocally that the auditor's determination was a final one and that the conditions to payment were met once the auditor certified that the target amount of $1.5 million was exceeded, *see, e.g.,* Wayne dep. at 29, 41, 47–48, it is clear that Wayne was not contradicting his earlier testimony in these responses, but was, as plaintiffs argue, referring to the defendants' right to review the mathematical calculations to determine if the adjustments were in fact deducted from the earnings figure, as opposed to the right to review how the auditor came to each figure. Additionally, one question refers to Wayne's previous testimony, yet defendants have not shown, and I have been unable to find, anything Wayne said earlier that meant that the auditor's determination was not final. I therefore do not find that these ambiguous responses support defendants' interpretation of the contract.

Finally, defendants argue that if the auditor's determination was intended to be a final one, the Agreements would have stated that more clearly. While I agree that the language could have been more precise, I am not persuaded that the Agreements are ambiguous on this issue.

> It is quite possible for two parties to agree that one or more questions shall be submitted to a [third party] without at the same time agreeing that the decision or award shall be final and conclusive. In the absence of expressions to the contrary, however, the plain inference is that the parties mean that the decision or award shall be conclusive on both parties.

Corbin on Contracts, § 652 at 125–27 (1960) (footnote omitted). There is nothing in the Agreements which is an "expression to the contrary" of finality. Moreover, given that some language of finality was included, it is more likely that had defendants intended the auditor's determination as to the adjustments to be reviewable, they would have included other language to reflect that intent.

Defendants also argue that the language "generally accepted accounting principles [GAAP] consistently followed throughout the periods involved" requires that accounting practices, as well as accounting principles, be followed consistently. They argue that since the auditor only determined that principles, rather than practices, were consistently followed, the auditor's calculations do not comply with the contract. However, the plain language of the Agreements concerns only accounting principles. "[W]here language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended." *Steuart v. McChesney*, 498 Pa. 45, 49, 444 A.2d 659, 661 (1982). Moreover, the outside auditor certified that GAAP had been followed consistently. Defendants in effect argue that the auditor's interpretation of the term GAAP is incorrect. I cannot agree, particularly in light of the fact that defendants' interpretation is contrary to the language of the Agreements, and also because the auditor, an independent and impartial third party, is undoubtedly familiar with the term in his field.

■ Having found that the auditor's determinations were intended to be final and that the auditor complied with the terms of the Agreements, I must now determine what review, if any, I may give to the auditor's determination. Defendants analogize the finality language in Section 2.1 to a binding arbitration clause, and argue that at a minimum I should review the auditor's findings to determine if they are supported by any evidence. They derive this standard from *NF & M Corp. v. United Steelworkers*, 524 F.2d 756, 760 (3d Cir.1975) and *Sun Oil Co. v. Local 8–901*, 421 F.Supp 1376, 1384 (E.D.Pa.1976), two cases that reviewed an arbitrator's award interpreting a contract made pursuant to federal labor law. I disagree both with defendants' characterization of this clause as a binding arbitration clause, and the appropriate standard of review of the auditor's determination.

> Under Pennsylvania law,
>
> [t]he principal that the opinion of a person who is not a party to the contract as to the adequacy of a performance, which opinion is by the terms of the contract determinative of some rights of the parties, must be an objective opinion made in good faith, seems self-evident and is well established in contract law.

*Flame v. Oak Lane Shopping Center*, 471 Pa. 112, 116, 369 A.2d 1220, 1222 (1977). Therefore, I may review the auditor's determination only to see if it was an objective determination made in good faith. As defendants do not allege, and there is nothing to suggest, that the auditor's findings were either not objective or not in good faith, my analysis ends here.

The fact that this type of provision is entitled to lesser review than a provision providing for arbitration is logical, for the purposes of the two provisions are different. The purpose of arbitration is to serve as an alternative form of dispute resolution. Both sides present evidence, and a hearing may be held. The purpose of a provision requiring a third party's opinion

to be final and binding, as in this case, is to avoid the work required by litigation. The parties choose to forego the benefits and costs of presenting arguments and evidence from their own perspective and instead rely on an impartial third party to independently evaluate the evidence and make his own determination. Once the parties have done this, as long as the third party's opinion is an objective one, made in good faith, it is deemed to be what the parties bargained for and is binding.

■ Even assuming, however, that Section 2.1 is a binding arbitration clause, the standard of review that defendants suggest is inappropriate here. Pennsylvania law, not federal law, governs this case. Although Pennsylvania has adopted the Uniform Arbitration Act, 42 Pa.C.S.C. §§ 7301–7320, Pennsylvania has retained common law arbitration as well. *See* 42 Pa.C.S.A. §§ 7341–7342. Where contracts do not specify whether common law or statutory arbitration principles should apply, it is assumed that common law principles govern. *Runewicz v. Keystone Insurance Co.*, 476 Pa. 456, 460–61, 383 A.2d 189, 191 (1978) (referring to Pennsylvania Arbitration Act of 1927); *Gentile v. Weiss,* 328 Pa.Super. 475, 479, 477 A.2d 544, 545–46 (1984); *Savage v. Commercial Union Insurance Co.*, 326 Pa.Super. 204, 208 n. 1, 473 A.2d 1052, 1054 n. 1 (1984); *Pennsy Supply Inc. v. The Nicholson Co.*, 321 Pa.Super. 475, 479 n. 1, 468 A.2d 808, 810 n. 1 (1983). Under common law arbitration, "the award of an arbitrator ... is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award." 42 Pa.C.S.A. § 7341; *Gentile*, 328 Pa.Super. at 479–80, 477 A.3d at 546, *Chervenak, Keane & Co. v. Hotel Rittenhouse Associates, Inc.*, 328 Pa.Super. 357, 361–62, 477 A.2d 482, 485 (1984) (citations omitted). Defendants have not made, and there is no evidence to support, any such allegations in this case. Therefore, even assuming Section 2.1 is construed as a provision for binding arbitration, the auditor's decision must be upheld.

## III. CONCLUSION

For the reasons stated above, I find that the Agreements are clear and unambiguous. I further find that the plain meaning of the Agreements is that the auditor's determination as to whether the net earnings, as defined in the Agreements, exceeded $1.5 million was a final determination, and that the auditor complied with the terms in the Agreements in making his determination. Because it is undisputed that the auditor found that the target amount was exceeded, I must grant summary judgment in favor of the plaintiffs.

An appropriate order follows.

## ORDER

Upon consideration of plaintiffs' motion for summary judgment, defendants' cross motion for summary judgment, and plaintiffs' response thereto, IT IS ORDERED that:

1. Plaintiffs' motion for summary judgment is GRANTED.

2. Defendants' motion for summary is DENIED.

3. Judgment is entered in favor of plaintiffs and against defendants.

IT IS FURTHER ORDERED that judgment is entered as follows:

1. Judgment for plaintiff Eugene C. Wayne and against:

   Defendant George Chopivsky, Jr. in the amount of $27,777.78;

   Defendant Richard E. Horman in the amount of $22,222.22;

   Defendant Joseph F. Corcoran in the amount of $4,550.56;

2. Judgment for plaintiff Kenneth R. Sandler and against:

   Defendant George Chopivsky, Jr. in the amount of $8,333.33;

   Defendant Richard E. Horman in the amount of $6,666.66; and

   Defendant Joseph F. Corcoran in the amount of $1,666.67;

3. Judgment for plaintiff John C. Wolfe and against:

Defendant George Chopivsky, Jr. in the amount of $38,888.89;

Defendant Richard E. Horman in the amount of $31,111.11; and

Defendant Joseph F. Corcoran in the amount of $7,777.78.

IT IS FURTHER ORDERED that there shall be added to the above amounts interest at the legal rate of 6% per annum from June 7, 1984.