J-A17024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MICHELLE SCHALLER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EXCELL HOMES, INC. | |
| Appellant | No. 2926 EDA 2013 |

Appeal from the Judgment Entered September 30, 2013
In the Court of Common Pleas of Pike County
Civil Division at No(s): 2011-00609

BEFORE:  GANTMAN, P.J., PANELLA, J., and STABILE, J.

MEMORANDUM BY PANELLA, J.                    **FILED DECEMBER 23, 2014**

Appellant, Excell Homes, Inc., appeals from the judgment entered in the Court of Common Pleas of Pike County, after an arbitration panel awarded Appellee, Michelle Schaller, $181,006.11 on her residential construction defect claim.  After careful review, we affirm.

Excell contracted with Schaller to build and sell her a residence in Lackawaxen for the price of $299,712.  The contract called for any disagreement, save for one involving a default in payment, to be submitted to binding arbitration.  The contract further specified that Schaller would select one arbitrator and Excell would select another.  These two arbitrators would then agree to the third arbitrator.

Excell built the home and Schaller subsequently filed a motion seeking to require Excell to exercise its authority to designate an arbitrator to

address a disagreement between the parties over the quality of the workmanship on the home. Schaller alleged that the defects in the home would require in excess of $140,000 to repair. Schaller named Charles Kannebecker, Esq., as her appointed arbitrator.

Excell filed an answer indicating that the only issue it had at the time was Schaller's default in payment for the property. Excell indicated that it had filed a mechanic's lien against the property, and denied that there were any defects in the workmanship. Excell further denied any responsibility to appoint an arbitrator.

The trial court ordered Excell to appoint an arbitrator. The trial court further held that, pursuant to the contract, Excell's claims for payment were not subject to arbitration and would be resolved through the mechanic's lien filed by Excell.

Excell appointed Jeffrey S. Treat, Esq., as an arbitrator, and Attorney Treat and Attorney Kannebecker appointed Mark E. Moulton, Esq., as the chairperson. The arbitration panel held a preliminary hearing in November, 2011, at which Schaller presented her case-in-chief. After this hearing, Excell requested an opportunity to bring a representative from the company that supplied the concrete for the home, as well as an engineer, to examine the concrete in place. Chairperson Moulton memorialized the board's ruling in a letter to the parties:

> There will be no home study or examination of the home by Excell's engineer. The engineer may examine the concrete to

respond to the issues already raised. If Excell wishes to pursue claims against the concrete company that is outside the scope of this arbitration and no such pre-complaint discovery will be allowed this Friday. I prefer to rely on the professionalism of counsel to limit Friday's time at the Schaller house to only a 20 to 30 minute examination of the basement concrete floor with core samples drawn if necessary, as a home study is specifically not authorized.

In a subsequent letter to the parties, Chairperson Moulton expanded on this ruling:

The ruling was to allow Excell to obtain a floor sample and not a home investigation. As for the balance of paragraph two, discovery should have been completed prior to the matter being listed for arbitration, and certainly any discovery issues should have been raised and resolved before the arbitration.

The additional request for an engineering inspection is outside the standard for these arbitrations. The panel discussed and ruled that this matter was a "bring it all at once and have the panel sort it out" affair. Aside from the issues of "metal design" in the basement structure; 2X10 vs 2X12s and correction of the piers in back, I do not note any substantial scientific testimony. Excell heard what Schaller was complaining of and had the opportunity to note same. Excell can certainly bring their own engineer to provide on the spot replies to the remaining testimony. In fairness, these matters are resolved by on-site presentation.

A second arbitration hearing was held in May 2012, approximately six months after the presentation of Schaller's case-in-chief. The arbitration panel, in a letter dated May 25, 2012, ruled in favor of Schaller, and awarded her $181,006.11.

Attached to the letter is a document entitled "Accompanying Memo to Board of Arbitrators' Decision," dated June 13, 2012. In this memo, Attorney Treat, the arbitrator appointed by Excell, set forth his reasoning in

finding for Schaller. Attorney Treat's memo highlights the condition of the concrete floor, concluding that "the concrete floor installed clearly fails to meet the requirements of good workmanship." Attorney Treat further concluded that other defects in the home "resulted from the lack of proper coordination and oversight by the Project Manager …," while noting that the project manager did not testify at the May hearing.

Schaller petitioned to have judgment entered upon the arbitrators' award. Excell filed a counter-petition to vacate the arbitrators' award. Schaller then filed preliminary objections to Excell's counter-petition. Excell subsequently filed an answer to Schaller's petition to confirm, and an amended counter-petition, to which Schaller again filed preliminary objections. The trial court granted Schaller's preliminary objections.

The trial court held a hearing[1] on Schaller's petition to confirm, and later granted Schaller's petition. Judgment was entered on September 30, 2013, and Excell filed this timely appeal.

---

[1] Excell has included, in the reproduced record, selected portions of the transcript from this hearing. There is no transcript in the certified record. Ordinarily, we can only consider documents which are part of the certified record. *Roth Cash Register Company, Inc. v. Micro Systems, Inc.*, 868 A.2d 1222, 1223 (Pa. Super. 2005). Furthermore, "[i]t is the obligation of the appellant to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." *Everett Cash Mutual Insurance Company v. T.H.E. Insurance Company*, 804 A.2d 31, 34 (Pa.Super. 2002)(quoting *Hrinkevich v. Hrinkevich*, 676 A.2d 237, 240 (Pa.Super. 1996)). However, since Schaller has not objected to the
*(Footnote Continued Next Page)*

On appeal, Excell raises the following issues for our review:

[1.] Whether the trial court erred as a matter of law and abused its discretion in dismissing the appellant's amended counter petition to vacate arbitration.

[2.] Whether the trial court erred as a matter of law and abused its discretion in dismissing the appellant's amended counter petition to vacate arbitration award based upon preliminary objections filed pursuant to the Pennsylvania rules of civil procedure.

[3.] Whether the trial court erred as a matter of law and abused its discretion in confirming the arbitration award since the appellant did not receive a full and fair hearing and there was misconduct or irregularities in the proceedings on the part of the arbitrators.

Appellant's Brief, at 4.

In its first two issues on appeal, Excell argues that the trial court erred in granting Schaller's preliminary objections to Excell's petition to vacate the arbitration award. In particular, Excell contends that a party cannot file preliminary objections to a petition. While we agree with Excell on this point of law, we conclude that the error is harmless under these circumstances.

Under the Uniform Arbitration Act, 42 Pa.C.S.A. §§ 7301-7362, a party wishing to have a court confirm or challenge an arbitration award is required to file a petition. *See* 42 Pa.C.S.A. § 7317.[2] The rules governing these

_(Footnote Continued)_ ―――――――――――

inclusion of any document in the reproduced record, we will address Excell's claims as if the documents were properly included in the certified record.

[2] Section 7317 applies to common law arbitrations as well as statutory arbitrations. *See* 42 Pa.C.S.A. § 7342(a).

- 5 -

petitions are the same as those "for hearing of petitions in civil matters." *Id*. "A hearing on a petition is not to be equated with a trial by the court sitting without a jury." *Haegele v. Pennsylvania General Ins. Co.*, 479 A.2d 1005, 1008 (Pa. Super. 1984) (citations, emphasis, and block quote formatting omitted). The rules governing petition practice are distinct from those governing actions instituted by complaint. *See id*. "Our rules of civil procedure governing petition practice make no provision for the filing of preliminary objections." *Cid v. Erie Ins. Group*, 63 A.3d 787, 792 (Pa. Super. 2013).[3]

Furthermore, a party may not file preliminary objections to a document that is not a pleading. *See* Pa.R.C.P., Rule 1028(a); *Fox v. Thompson*, 546 A.2d 1146 (Pa. Super. 1988).[4] A petition to vacate or modify an arbitration award is not listed as a pleading in Pa.R.C.P., Rule 1017. As such, Excell is correct in asserting that the trial court erred in granting Schaller's preliminary objections.

---

[3] Unlike Philadelphia County, Pike County does not have a local Rule 206.1(a) listed on the Pennsylvania Judiciary's Web Application Portal. Thus, *Cid* are distinquishable from the present appeal.

[4] We find that *Clark v. State Farm Auto. Ins. Co.*, 599 A.2d 1001 (Pa. Super. 1991) and *Boyce v. St. Paul Property and Liability Ins. Co.*, 618 A.2d 962 (Pa. Super. 1992), distinguishable from the present case. Both of those panels held that a petition to compel arbitration was the functional equivalent of a complaint, and therefore subject to preliminary objections. To whatever extent those holdings remain valid, we conclude that a petition to confirm, vacate, or modify an arbitration award is not the functional equivalent of a complaint.

Nevertheless, this error did not prejudice Excell in any way. The trial court in this matter was presented with conflicting petitions regarding the arbitration award. On appeal, Excell does not identify any issue that the trial court failed to address in issuing the order to confirm the arbitration award. Conceptually, if a court were to deny a petition to confirm an arbitration award on substantive grounds, it would need to find that sufficient grounds exist to modify or vacate the award. Conversely, in the present case, the trial court confirmed the arbitration award after addressing all of Excell's defenses. As Excell has not identified any defenses that were exclusive to the petition to vacate, we conclude that the trial court's procedural error was harmless.

In its final, bifurcated issue on appeal, Excell presents two arguments that the trial court erred in confirming the arbitration award. Excell asserts that substantial irregularities existed in the arbitration proceedings such that Excell was denied its due process right to a full and fair hearing. *See* Appellant's Brief, at 16.

Section 7341 of the Judicial Code provides that common law arbitration is binding and "may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award." 42 Pa.C.S.A. 7341. Our standard of review is well defined. Judicial review of a common law arbitration award is severely

limited because otherwise arbitration would be an unnecessary stage of litigation, causing only delay and expense without settling the dispute. ***See Cargill v. Northwestern Nat'l Ins. Co.***, 462 A.2d 833, 834 (Pa. Super. 1983).

> The arbitrators are the final judges of both law and fact, and an arbitration award is not subject to a reversal for a mistake of either. Neither we nor the trial court may retry the issues addressed in arbitration or review the tribunal's disposition of the merits of the case. Rather, we must confine our review to whether the appellant was deprived of a hearing or whether fraud, misconduct, corruption or other irregularity tainted the award. The appellant has the burden of providing clear, precise, and indubitable evidence to demonstrate that an irregularity in the proceedings occurred. In this context, irregularity refers to the process employed in reaching the result of the arbitration, not the result itself.

***McKenna v. Sosso***, 745 A.2d 1, 4 (Pa. Super. 1999). "[T]he right to a fair hearing comprises the right to notice and the right to an opportunity to be heard." ***Id***. (citation omitted).

The availability and scope of pre-hearing discovery is a matter left in the exclusive jurisdiction of the arbitrators, unless the arbitration agreement specifies otherwise. ***See Savage v. Commercial Union Ins. Co.***, 473 A.2d 1052, 1059 (Pa. Super. 1984). Furthermore, "[t]he right to discovery is one of these devices which is not obligatory as an essential of due process to a valid arbitration proceeding." ***Harleysville Mutual Casualty Co. v. Adair***, 218 A.2d 791, 794 (Pa. 1966).

As its first assertion of error in this issue, Excell claims that the agreement to arbitrate required certain pre-hearing discovery rights. In

particular, Excell argues that the Construction Agreement requires the arbitration to proceed pursuant to the American Arbitration Association's Home Construction Arbitration Rules. Section ARB-1 (a) of the Home Construction Arbitration Rules provides that "the parties shall be deemed to have made these Rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association under its Home Construction Arbitration Rules." Paragraph 13 of the Construction Agreement provides that "[t]he arbitration shall be held under the standard form of arbitration and rules of the American Arbitration Association." While Excell asserts that there are no 'standard' rules under the American Arbitration Association, we note that the explicit language of the contract does not "provide for" use of the Home Construction Rules.

From documents submitted to the trial court during its consideration of the petition to confirm, it appears that the arbitrators utilized American Arbitration Association Rules designed for use in consumer contracts.[5] There is no evidence in the record to support a finding that these Rules do not constitute the 'standard' Rules under the American Arbitration Association. It is at best arguable as a question of law, under Section ARB-1 of those Rules, that the Home Construction Rules applied to this arbitration. Thus,

---

[5] The certified record does not contain these documents, nor does it contain copies of Schaller's expert reports, all of which are included in the reproduced record. As before, in the absence of an objection by Schaller, we decline to find Excell's claims waived.

Excell has not met its burden of establishing its claim by clear evidence. Given the courts' extremely limited power of review, and the deference required to be given to the arbitrators on questions of law as well as fact, we cannot conclude that the failure to follow the Home Construction Rules deprived Excell of a full and fair arbitration hearing.

In the alternative, Excell argues that the arbitrators violated even the limited arbitration rules that they had held applied. Excell relies upon "Principle 12" and "Principle 13" from the documents submitted to the trial court. Principle 12 provides that "[a]ll parties are entitled to a fundamentally-fair arbitration hearing." Principle 13 provides that

> [n]o party should ever be denied the right to a fundamentally-fair process due to an inability to obtain information material to a dispute. Consumer ADR agreements which provide for binding arbitration should establish procedures for arbitrator-supervised exchange of information prior to arbitration, bearing in mind the expedited nature of arbitration.

Excell maintains that it was denied a "fundamentally-fair process" when it was denied the ability to have its expert examine the home.

Excell analogizes these circumstances to those present in *Smaligo v. Fireman's Fund Ins. Co.*, 247 A.2d 577 (Pa. 1968). In *Smaligo*, the arbitrator had denied the appellant the right to present the testimony of his expert witness. *See id*., at 580. On appeal, the Supreme Court of Pennsylvania held that the complete exclusion of relevant evidence denied the appellant a full and fair hearing before the arbitrator. *See id*., at 579.

Here, Excell does not contend that the arbitration panel denied it the opportunity to present its expert's testimony. Nor has Excell identified how its expert's inability to examine the home prevented the expert from being able to rebut the conclusions in Schaller's expert's report. There is no expert testimony or report in the record elucidating how the inability to examine the home completely confounded Excell's expert's ability to testify. While Excell cannot be required to identify what the expert would have found during her inspection, it is equally true that the burden of establishing the claim that it was denied a fair hearing by clear evidence rested on Excell.

Schaller's expert report closes with the following conclusion:

Although many aspects of the deficiencies and concerns identified above can be considered workmanship items, there are concerns which warrant further attention. These include but are not limited to the likely replacement of the basement slab, the concerns with the steel reinforcement, or lack thereof, within the foundation walls, the wall framing and lateral bracing lines, the sizing and design of the structural steel beams, and the sono-tube support of the rear deck. *It is our opinion that the house as constructed does not meet the requirements of the plans and specifications which were provided to our office for review.*

(emphasis supplied). Excell does not contend that it did not have copies of the plans and specifications. Furthermore, at least some of the relevant specifications identified by Schaller's expert are included in exhibit "B" to the contract. The first arbitration hearing occurred at the home, and the arbitrators granted Excell's request to perform core samples on the concrete foundation to allow its expert an ability to respond to the claimed deficiencies in the floor.

Under these circumstances, we conclude that *Savage* requires decisions regarding the scope of discovery available in arbitration to be left to the exclusive jurisdiction of the arbitrators. The arbitrators decision did not completely deprive Excell of an opportunity to present relevant evidence. Parties to an arbitration agreement necessarily understand and desire for the streamlined processes inherent to alternative dispute resolution procedures. While Excell was not provided the full panoply of discovery rights inherent in traditional court cases, it has not established, by clear, precise and indubitable evidence that it was denied a fair hearing. Accordingly, we affirm the trial court's confirmation of the arbitrators' award.

Judgment affirmed. Jurisdiction relinquished.

Judge Stabile joins in the memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/2014

- 12 -